Good morning. Why don't we just wait a minute for counsel here? All right, very well. You may proceed. Good morning, Your Honors, and may it please the Court, Marenica Fajanah for the Plaintiff Appellant Matthew Mungai. This Court should reverse the District Court's opinion dismissing Mr. Mungai's Pro Se complaint with prejudice for two reasons. The first is that the District Court failed to liberally construe Mr. Mungai's complaint. If it had, it would have determined that he plausibly alleged a Title VI claim. Second, the District Court abused its discretion when it dismissed his complaint with prejudice because that decision was based in part on the Court's determination that Mr. Mungai did not have any viable claims. An independent reason why the District Court abused its discretion in dismissing his complaint with prejudice is because it failed to analyze the impact of this dismissal on his ability to maintain this litigation as a Pro Se Plaintiff. Regarding his Title VI claim, Mr. Mungai plausibly alleged each element. First, with respect to a racially hostile environment, this Court held in LSV Houston that using a racial epithet once, along with other racially demeaning language, can create a racially hostile environment under Title VII. The District Court found that Mr. Mungai satisfied this element by his allegations of repeatedly being subjected to racial epithets and other racially demeaning language and found that these constituted serious acts of racial hostility. With respect to actual knowledge, Mr. Mungai alleges that he made contemporaneous reports of the racial harassment to class staff and university staff. When those individuals failed to act, Mr. Mungai reported the harassment to the Anthropology Department. When that department failed to respond to address the harassment, Mr. Mungai reported the harassment to the Student Conflict Resolution Center in December of 2021. In Davis v. Monroe County Board of Education, the Supreme Court held that an appropriate person is someone who exercises substantial control over both the harasser and the context in which the harassment occurs such that they can address the harassment in some way. Here, based on Mr. Mungai's allegations, it was a reasonable inference for the District Court to draw that either class staff, university staff, or an academic department comprised of both professors and administrators or a university-wide office charged with resolving Mr. Mungai and his academic environment such that they can be appropriate people under Davis. And turning to the third element of deliberate indifference, Mr. Mungai alleges that both the individual staff, the Anthropology Department, and the Student Conflict Resolution Center failed to respond to the harassment in any way or remedy it. Again, turning to the District Court's abuse of discretion, Rule 8 of the Federal Rules of Civil Procedure requires courts to construe pleadings as to due justice. Courts have a special responsibility in this regard when it comes to pro se plaintiffs. In Navarro v. Chief of Police, Des Moines, Iowa, this Court held that even where pro se claims are, quote, inartfully pled, if they appear to be plausible, it is an abuse of discretion for a District Court to dismiss such a complaint with prejudice. Because Mr. Mungai plausibly pled his Title VI claim, the District Court did abuse its discretion here in dismissing his complaint with prejudice. And in Truly v. Kennedy, this Court held that pro se litigants should have, quote, meaningful notice of what is required of them. And in that case, this Court was evaluating the propriety of a District Court's dismissal of a pro se complaint even without prejudice and found that meaningful notice is an important factor that should be considered when evaluating whether or not that dismissal without prejudice was abuse of discretion. Here, Mr. Mungai had no notice. The first opportunity that he had to learn of any deficiencies with his pleadings came in the District Court's opinion, dismissing his complaint with prejudice. In this case... What's the relevance that he had several motions relieved to amend that were deemed futile? So, Mr. Mungai, again, operating pro se, filed several motions to amend, but those motions were not actually resolved until the District Court issued its opinion dismissing the complaint and also denying all of those motions to amend. In terms of the propriety of the futility determination, I think that also goes to the District Court's improper determination that Mr. Mungai had not plausibly pled his allegations. That just folds into your argument on the merits of the original complaint. But you're saying that you think the District Court cannot dismiss with prejudice without giving notice of some kind as to what needs to be pleaded beyond the background rules of Iqbal and Twombly and Davis and the statute and so forth. There has to be some dialogue with the plaintiff about here's what more you need to plead. I wouldn't say that this Court's precedent or the Supreme Court precedent requires a dialogue, but I do think that... What kind of notice do you have in mind then? I thought you were describing a dialogue where the judge says, here's your notice, here's your chance. No, just... Oh, excuse me. Because you said the motions for leave came before the order and the order was the first notice. So I thought you were implying that the judge has to give some kind of notice and allow the plaintiff to try again. Go ahead. What did you... No, Your Honor. Just in an order saying, these are the deficiencies, here is what is wrong, here is an opportunity for you to try to address those deficiencies. Particularly because... All right. So you're saying the Court has to enter that type of order? I merely mean, and the same opinion that was issued, just with a dismissal without prejudice rather than a dismissal with prejudice. I don't mean to mean an independent order. So the dismissal without prejudice would have been fine. The dismissal with prejudice is a violation of due process, given the prosaic nature of this defendant? Given the prosaic nature of the liberal construction standard, but also because if Mr. Mungai's allegations are properly construed, he did plausibly plead a Title VI claim in the first instance. So I don't mean to concede that Mr. Mungai's nature as a prosaic litigant carries the day. I think that if the district court drew reasonable inferences in Mr. Mungai's favor based on the well-plaid allegations in his First Amendment complaint, as the district should not have been dismissed at all, at least with respect to the Title VI claim. What was your case that you said shows that dismissal with prejudice is impermissible? Did you have an Eighth Circuit case? Yes. That's Shuley v. Kennedy. You think Shuley v. Kennedy? Yes. Shuley v. Kennedy and also Navarro v. Chief of Police, Des Moines, Iowa. All right. And I do want to turn to why the allegations in Mr. Mungai's complaint were sufficient in the first instance with respect to his Title VI claim. So with racially hostile environment, as I said, the district court already found that he alleged serious acts of racial hostility. So then turning to actual knowledge, the district court seemed to take issue with the fact that at certain times in the complaint, Mr. Mungai did not identify the people to whom he reported by name. He referred to just their job function. And I believe that that was legal error for a number of reasons. First, it's not the individual's name that goes to plausibility. Under Davis, it is actually the job function because the job function is what tells you does this person exercise the requisite level of control over both the harasser and the harassment conduct. What job function do you think was cited that is sufficient? So he mentions an anthropology professor by name and also says that the professor in conjunction with the anthropology department received reports of harassment and did not grant his accommodation request to have extra time to do his coursework because he was struggling to keep up with his work because of the harassment that he was facing. So that is one instance where there's a name and, in our view, a clear... You think the professor is enough or are you relying on the reference to the department? I think in conjunction. Some courts that, in conjunction, the professor along with the department, right, because the department is made up of professors and administrators and when he's reporting harassment that took place within the anthropology department, it was certainly a reasonable inference for the district court to draw that the anthropology department has control over its own students and the academic environment there. What paragraph specifically are you looking at? Because I'm looking at, there's a lot of the reported to university status. Yes, yes. So starting with, this is the first amended complaint, so ECF document number 22, starting with paragraph 22. He talks about not being able to finish this course, which is Anthropology 1001, and then paragraph 23, he says, or alleges rather, Ms. Yezi Woodley and the anthropology department denied a request for an extension due to these incidents in number 22, which is referring to paragraph 22. Well, that says the department denied a request for an extension, but the previous paragraph says to whom the incidents were reported. Do you think 23 is referring to reporting the incidents as well? I do, because it says denied a request for an extension due to these incidents in number 22. I think reading these paragraphs together, it's a reasonable inference to draw that he told Ms. Yezi Woodley and the anthropology department why he needed an extension, right, because it says due to these incidents. You agree that an allegation of staff is insufficient? I think that in certain instances, when Mr. Mungai says class staff, that that could be sufficient, because the district court for the District of Minnesota has found that a teacher could be an appropriate person to respond to peer-to-peer harassment that is happening within that teacher's classroom. So I would not say that it's a categorical rule, but I think the question of who is an appropriate person is very context-specific. It's really who is committing the harassment, where is the harassment occurring, what authority does that person have to act, do they need to get permission from someone else, are there other policies that exist, whether that's in the university or if we're in the K-12 setting, that set forth what that person can do. And unless there are other questions, I'd like to yield the rest of my time for rebuttal. You may, thank you for your time. Okay, thank you. Mr. Premis, we'll hear from you. You may proceed. Thank you. May it please the Court, Counsel, the university respectfully requests that the district court's order dismissing the amended complaint with prejudice be affirmed. The district court correctly concluded that the amended complaint failed to state a claim upon which relief can be granted. Beginning with the original complaint and the original – the defendant's motion to dismiss the original complaint, the plaintiff was on notice about what the deficiencies were in the original complaint. Through the amended complaint and subsequently through a second, third, and fourth proposed amended complaint, each one opposed by the university, the plaintiff was on notice about how his allegations were deficient to properly plead a Title VI claim. I want to spend the bulk of my time on the Title VI claim, but just very briefly address the other counts in the complaint. Counsel, first of all, do you agree that the deliberate indifference test is the appropriate test to apply for Title VI? Yes, I do. We've never formally adopted that. I recognize that. The reason I say yes is my understanding in the Title IX context it has been adopted and there is case law that for Title VI claims, sometimes the courts do look at Title IX cases. But in any event, on this appeal, I'm not disputing that deliberate indifference is the right lens for the plaintiff's amended complaint in this matter. Thank you. But just very briefly on counts two through eight. So count one is the Title VI claim that I hope to spend most of my time addressing. Go ahead. The counts two through eight are other, I'll just say that in our brief and in the district court's decision, there was a pretty comprehensive analysis for why counts two through eight should be dismissed. There was also an effort in subsequent amended complaints to add individuals as defendants. And again, for the reasons set forth in our brief and by the district court, we'd ask that that be affirmed. Now, you know, for the most part, the only dispute is on Title VI, so that's where I'll spend the balance of my time. When the original complaint came in, as with every case, you know, I do my due diligence looking, identifying, collecting, gathering all the relevant documents, speak to the relevant witnesses. And the motion to dismiss was brought for failure to state a claim, not as some way to try to technically trip up a pro se plaintiff, but it was my belief in bringing the motion that if the plaintiff chose to amend, that the information disclosed in any amendment would make it obvious that there isn't a viable Title VI claim. So from the outset, among the university's deficiencies pointed out to the plaintiff was when. When was a report made to the university? To whom? To whom did the plaintiff make a report? When the plaintiff made a report, what did the plaintiff report? And since often it involves a matter where if someone's alleged to have violated the university's code of conduct, a student or employee, did the plaintiff identify the alleged perpetrator so that discipline could be brought against that person? The hope was that the plaintiff would concede that most of the reports were made in the same time frame when this lawsuit was filed and served in district court. The plaintiff did attempt in the proposed third amended complaint and likewise in the pro se reply brief to attach some documents, an incomplete set of documents, but documents showing the report that many of the reports, if not almost all of them, were made in the summer of 2023. In the original complaint, the plaintiff at the very top of his complaint points out that he graduated in 2022. He doesn't mention that in any subsequent amended complaint. The plaintiff, in response to the original motion to dismiss, doesn't identify the dates of reports in almost all of the allegations. Instead, there's an allegation that something occurred in a particular specific time frame. There's an allegation that he told someone, identified broadly usually as, quote, university staff, close quotes. And he's hoping that the inference will be that the report was made sometime around the time he alleges the incident occurred. But he doesn't, despite many opportunities, ever identify the date when a report is made. Making a report to the university's office that handles Title IX and Title VI investigations one year after graduating, around the time, if not after the time that a federal lawsuit is filed and served, does not demonstrate deliberate indifference. I understand the procedural posture in this matter, and I'm not asking the court to go beyond the procedural posture appropriate to a 12B6 motion. But it's important that any inference to draw be a reasonable inference. And although the plaintiff is pro se, there's not a separate set of substantive law that the pro se plaintiff, that's different for pro se plaintiffs. The plaintiff's amended complaint fails to set forth facts that, if true, would establish that the university had actual knowledge, that you can impute the knowledge to the university, and deliberate indifference in response to those allegations of discrimination. Likewise, you know, with respect to allegations of misconduct that occurred within the class, again, the allegations generally are silent as to when allegations were reported. Generally the allegation, again, is, quote, university staff member, close quotes. And then even beyond that, there's not an allegation or any set forth as to what specifically was said. There's an allegation, for instance, in the anthropology class that a professor or an instructor didn't grant a request to be able to turn in work later than the rest of the class, but no allegation as to what specifically was said to this unnamed staff member to appreciate whether the decision to decline a request to turn in work late somehow constitutes deliberate indifference under Title VI. Well, she says on paragraph 23 that it refers back to 22, and the argument is that, I guess, the implication is that the incidents in 22 were reported. Have you heard that argument? I remember hearing that argument and understand the point. And so, you know, with respect to that specifically, those paragraphs and any surrounding paragraphs are silent as to what was said to the anthropology instructor as to why the plaintiff was requesting permission to be able to turn in work late or for an extension of time. And there's nothing about those allegations, even if we want to give the pro se plaintiff a benefit of the doubt and say, well, the report was made while the class was still occurring, you know, before the end of the semester. There's not an allegation as to what was said to the, I'll say, the professor or the classroom instructor to understand, to be able to say that the decision not to give the plaintiff an extension of time for certain class assignments constitutes deliberate indifference. And, likewise, the district court, in its order, was quite good going claim by claim as to why, what the deficiencies were. And it's important to point out that this shouldn't have been a surprise to the pro se plaintiff. In many aspects, the district court was agreeing with arguments that were raised by the university in its pleadings. And after the university raised these arguments in its motion to dismiss the amended complaint, the plaintiff did repeatedly file motions for leave to file a second, third, and even a fourth amended complaint, but never explicitly addressing when reports were made to whom. That's information that continued to be missing, other than in response to the third amended, the proposed third amended complaint, the motion for leave to seek a third amended complaint, and in the pro se's reply brief before this court, including some documents which do show the reports being made in the summer of 2023, a full year after the plaintiff had graduated from the University of Minnesota. Looking at the four corners of the amended complaint, the documents embraced by the complaint, the documents embedded in the complaint, and documents that are a matter of public record, the district court did not abuse its discretion and gave a detailed analysis as to why the myriad allegations raised in all the amended versions of the amended complaint failed to state a proper claim under Title VI. For those reasons, the university respectfully requests that the district court's order be affirmed in all respects. I'm certainly happy to answer any questions. Otherwise, I'll yield the balance of my time. Very well. Thank you for your argument. Thank you. We'll hear rebuttal. Okay. So, regarding the notice element, I did want to make clear that I don't think that the case law supports a proposition that your adversary's motion to dismiss would put a pro se litigant on notice of potential pleading deficiencies. Rule 8 puts that responsibility on the court, not on opposing counsel. So, I don't agree that a motion to dismiss with argumentation is the meaningful notice that Rule 8 and this court is talking about when it talks about pro se plaintiffs. Going back to the supposed deficiencies regarding the details of the reports, I think first the way that the complaint is set forth where each paragraph has a time, it has a month, it has a year, and it has a specific allegation of harassment and says a report is made, it's a reasonable inference to draw that that report is being made about what is being described in that paragraph and not something else. I think as a factual matter, it is simply inaccurate to say that Mr. Mungai never has allegations that have a temporal quality to them. We discussed the allegations about the Anthropology Department and the quest for an extension and his allegation that that quest was denied during that time frame. Also, in paragraph 18, he alleges that he made a report to class staff, but that no response was made, quote, for the duration of class. It's a very reasonable inference to draw that that report was made while that class was ongoing. And in paragraph 28, in the report that he made to the Student Conflict Resolution Center, he says this is the response that was taken at that time. The staff member from that center told him to switch schools. So I think just as a factual matter, that's not true that his reports don't contain some sort of temporal quality. Can I go back to just Rule 8 real briefly? You're talking about, like, which is the general pleading rule, right? It just talks about what you have to plead. Where in that do you find anything where anyone's got to be put on notice by anyone that their pleading's deficient, whether you're pro se or not? It's not in the text of the rule. It's in different court decisions, like Schooley that I mentioned and also Erickson v. Pardis, which is a Supreme Court decision that is interpreting Rule 8 vis-a-vis a motion to dismiss with a complaint with a pro se plaintiff. And if I could just make one more final point. I did want to point this court to Davis v. Washington University in St. Louis, which is an Eighth Circuit decision, which says when the court is faced with completing plausible inferences, it should draw every inference in plaintiff's favor. And the fact that there are competing inferences that are both equally plausible means that the claim should not end there. Thank you. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file a decision in due course. Counsel are excused. The court will be in recess for five to ten minutes.